## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ELECTRIC INSURANCE COMPANY

V.

CASE NO: 3:02CV1706 (WWE)

DARLENE CASTROVINCI, RONALD A.
CASTROVINCI, JOSEPH CASTROVINCI,
JANE DOE, PPA, JAMES DOE, JANE DOE     July 16, 2003
INDIVIDUALLY AND JOHN DOE

## LOCAL RULE 56 (a) 1 STATEMENT OF THE DEFENDANTS RONALD A. AND DARLENE CASTROVINCI IN SUPPORT OF THEIR CROSS MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56 (a) 1 of the United State District Court for the

District of Connecticut, the defendants Ronald A. and Darlene Castrovinci

(hereinafter Castrovinci's) state the following material facts:

1.     That the Castrovinci's reside at 41 Maplewood Drive, New

Milford, Connecticut 06776 (Affidavit of Darlene Castrovinci,

paragraph 6. attached hereto as Exhibit 1.) ("Darlene's affidavit")

2.     Darlene Castrovinci insured said property with Electric Insurance

under policy number 6004051H3 (Darlene's affidavit at 7.)

3.     Ronald A. and Darlene Castrovinci are husband and wife.

(Darlene's affidavit at 3.)

4.    Ronald A. Castrovinci is the father of Joseph Castrovinci
      (Darlene's affidavit at 4.)

5.    Joseph Castrovinci is the stepson of Darlene Castrovinci
      (Darlene's affidavit at 5.)

6.    On or about April 12, 2002, a lawsuit was initiated in the Superior
      Court for the Judicial District of Litchfield by Jane Doe, John Doe
      and James Doe (hereinafter "Doe action") against Ronald A.,
      Darlene and Joseph Castrovinci (Complaint attached hereto as
      exhibit 2)

7.     Pursuant to the allegations of the state court complaint in the Doe
      action, John and Jane Doe acted as childcare providers for Joseph
      Castrovinci (complaint at paragraph 2.).

8.    Pursuant to the allegations of the state court complaint in the Doe
      action, Joseph Castrovinci had improper sexual contact with James
      Doe between February 2001 and November 2001. (Complaint at
      paragraph 5.)

9.    The Castrovinci's had a valid contract of insurance with Electric
      Insurance during the time period covered in the state court
      complaint. (Darlene's affidavit at 10.)

10.    There are no allegations in the complaint that allege any improper

sexual contact with James Doe by either Ronald A. or Darlene

Castrovinci. (Darlene's affidavit at 11.)

11.    The Castrovinci's are the named insureds under Homeowners

Policy Number 6004051H3.  (Insurance policy attached hereto as

exhibit 3.) (Policy at page 1.)

12.    Pursuant to "Section II – Liability Coverages" the policy requires

Electric Insurance to indemnify the Castrovinci's up to its limit of

liability, and to provide a defense at its expense of any suit alleging

a claim for bodily injury.  (Policy at page 12.)

13.    Pursuant to "Sectio II – Liability Coverages" the coverage afforded

under the policy applies to each insured separately. (Policy at page

16)

14.    Electric Insurance is currently providing a defense of the Doe

action under a reservation of rights. (Darlene's affidavit at 12.)


The Defendants, Darlene Castrovinci
and Ronald A. Castrovinci

David S. Feldman, Bar No. CT 03556
Willinger, Willinger & Bucci, P.C.
855 Main Street
Bridgeport, CT  06604
Tel:  (203) 366-3939

3

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the above date to the following:

Patrick M. Noonan, Esq.
Delaney, Zemetis, Donahue, Durham
& Noonan, P.C.
741 Boston Post Road, Suite 306
Guilford, CT  06437

Joel Faxon, Esq.
Koskoff, Koskoff & Bieder
350 Fairfield Ave.
Bridgeport, CT 06604

Rhonda L. Rittenberg, Esq.
Thomas M. Elcock, Esq.
Prince, Lobel, Glovsky & Tye, LLP
585 Commercial Street
Boston, MA  02109

David S. Feldman, CT 03556

4

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ELECTRIC INSURANCE COMPANY

V.

CASE NO: 3:02CV1706 (WWE)

DARLENE CASTROVINCI, RONALD A.
CASTROVINCI, JOSEPH CASTROVINCI,
JANE DOE, PPA, JAMES DOE, JANE DOE        July 10, 2003
INDIVIDUALLY AND JOHN DOE

# Affidavit of Darlene Castrovinci

The undersigned be duly sworn deposes and says:

1. I am over the age of 18 years and believe in the obligations of an oath.

2. I am personally familiar with the facts contained herein.

3. I am married to Ronald Castrovinci.

4. Ronald has a son, Joseph, who lived with us during the period of   February 2001 through November 2001.

5. Joseph is my stepson.

6. I reside at 41 Maplewood Drive in New Milford, CT with my husband and stepson.

7. Electric Insurance insures the property at 41 Maplewood Drive under Homeowner's policy no. 6004051H3.

8. On or about April 12, 2002 Ronald, Joseph and I were served with a lawsuit brought by Jane Doe, John Doe, and James Doe.

9. The complaint alleges improper sexual contact by Joseph Castrovinci with James Doe in our home between February 2001 and November 2001.

10. The Homeowners policy I had with Electric Insurance, policy no. 6004051H3, covered the period of February 2001 through November 2001.

11. I have reviewed the allegations of the complaint filed by the Doe's and it contains no allegations of improper sexual contact by either Ronald or myself with James Doe.

12. Electric Insurance is currently providing a defense in the state court action under a
    reservation of rights.

_____
Darlene Castrovinci

Subscribed and sworn to before me this __10th__ day of __July_____, 2003

_____
Commissioner of the Superior Court
Notary Public
My Commission Expires:  04/30/2004

RETURN DATE: APRIL 23, 2002    : **SUPERIOR COURT**

JANE DOE, PPA, JAMES DOE, JANE DOE  : **JUDICIAL DISTRICT OF LITCHFIELD**
INDIVIDUALLY AND JOHN DOE

VS.            :

RONALD A. CASTROVINCI, DARLENE
CASTROVINCI AND JOSEPH CASTROVINCI : APRIL 12, 2002

<u>COMPLAINT</u>

<u>INTRODUCTION</u>

  1.  Joseph Castrovinci, age 14, is the son of Ronald A. Castrovinci and Darlene Castrovinci.

  2.  Beginning in February, 2001 through November, 2001, Jane Doe and John Doe acted as a child care providers for Joseph Castrovinci.

  3.  During and prior to that time, Joseph Castrovinci was known to his parents, defendants Ronald A. Castrovinci and Darlene Castrovinci, to be a sexual abuser of children.

  4.  During and prior to that time, on information and belief, Joseph Castrovinci had juvenile charges pending against him for various improper sexual acts with other children.

  5.  Between February, 2001 and November, 2001, Joseph Castrovinci perpetrated sexual assault, sexual battery, sodomy, anal rape and had improper sexual contact with James Doe, age 7.

<u>COUNT I – SEXUAL ASSAULT</u>

  1.-5.  Paragraphs 1 through 5 of the Introduction are hereby incorporated as paragraphs

1 though 5 of this Count as if fully set forth herein.

      6.    The defendants are liable to the plaintiffs for the sexual assaults perpetrated against James Doe by Joseph Castrovinci.

      7.    As a result of the assaults, the Plaintiffs suffered severe emotional distress and have incurred and will continue to incur expenses for treatment.

      8.    Plaintiff James Doe also suffered an insult to his bodily integrity and a diminution in his ability to enjoy life's activities.

## COUNT II - NEGLIGENCE

      1.-8.    Paragraphs 1 through 8 of Count One are hereby incorporated as paragraphs 1 though 8 of this Count as if fully set forth herein.

      9.    The aforementioned actions and injuries were caused by the Defendants Ronald and Darlene Castrovinci's negligence in one or more of the following ways:

      (a)    they knew or should have known of Joseph Castrovinci's propensity to assault children but did nothing to protect the Plaintiffs;

      (b)    they failed to warn the Plaintiffs;

      (c)    they failed to adequately supervise Joseph Castrovinci;

      (d)    they failed to adequately monitor Joseph Castrovinci; and

      (e)    they committed risk of injury to a minor in violation of General Statutes § 53-21.

## COUNT III - RECKLESSNESS

      1.-8.    Paragraphs 1 through 8 of Count One are hereby incorporated as paragraphs 1

through 8 of this Count as fully set forth herein.

   9.    The aforementioned actions and injuries were caused by the Defendants, Ronald and Darlene Castrovinci's recklessness in one or more of the following ways:

      (a)    they knew or should have known of Joseph Castrovinci's propensity to assault children but did nothing to protect the Plaintiffs, in conscious disregard of the plaintiffs' rights;

      (b)    they failed to warn the Plaintiffs in conscious disregard of the plaintiffs' rights;

      (c)    they failed to adequately supervise Joey Castrovinci in conscious disregard of the plaintiffs' rights;

      (d)    they failed to adequately monitor Joey Castrovinci in conscious disregard of the plaintiffs' rights; and

      (e)    they recklessly committed risk of injury to a minor in violation of General Statutes § 53-21.

**WHEREFORE, THE PLAINTIFF CLAIMS DAMAGES, INCLUDING PUNITIVE DAMAGES, IN EXCESS**

**OF FIFTEEN THOUSAND ($15,000.00) DOLLARS.**

This matter is within the jurisdiction of this Court.

_____
Joel T. Faxon
Commissioner of the Superior Court
For Fairfield County

**KINDLY ENTER AN APPEARANCE**
**FOR THE PLAINTIFF:**

**KOSKOFF, KOSKOFF & BIEDER, P.C.**
350 Fairfield Avenue
Bridgeport, Connecticut  06604
Telephone:  (203)336-4432
Fax: (203)368-3244
Juris Number:   32250

HO 00 03 04 91

# HOMEOWNERS 3
# SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "Business" includes trade, profession or occupation.

3. "Insured" means you and residents of your household who are:

   a. Your relatives; or

   b. Other persons under the age of 21 and in the care of any person named above.

   Under Section II, "insured" also means:

   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";

   d. With respect to any vehicle to which this policy applies:

      (1) Persons while engaged in your employ or that of any person included in 3.a. or 3.b. above; or

      (2) Other persons using the vehicle on an "insured location" with your consent.

4. "Insured location" means:

   a. The "residence premises";

   b. The part of other premises, other structures and grounds used by you as a residence and:

      (1) Which is shown in the Declarations; or

      (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with a premises in 4.a. and 4.b. above;

   d. Any part of a premises:

      (1) Not owned by an "insured"; and

      (2) Where an "insured" is temporarily residing;

   e. Vacant land, other than farm land, owned by or rented to an "insured";

   f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

   g. Individual or family cemetery plots or burial vaults of an "insured"; or

   h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "Bodily injury"; or

   b. "Property damage."

6. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

7. "Residence employee" means:

   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or

   b. One who performs similar duties elsewhere not related to the "business" of an "insured."

8. "Residence premises" means:

   a. The one family dwelling, other structures, and grounds; or

   b. That part of any other building;

   where you reside and which is shown as the "residence premises" in the Declarations.

   "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

HO 00 03 04 91

## SECTION I - PROPERTY COVERAGES

### COVERAGE A - Dwelling

We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."

This coverage does not apply to land, including land on which the dwelling is located.

### COVERAGE B - Other Structures

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. Used in whole or in part for "business"; or

2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

### COVERAGE C - Personal Property

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";

2. A guest or a "residence employee," while the property is in any residence occupied by an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises," is 10% of the limit of liability for Coverage C, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.

4. $1000 on trailers not used with watercraft.

5. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.

6. $2000 for loss by theft of firearms.

7. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

8. $2500 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.

9. $250 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.

10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

   a. Accessories or antennas; or

   b. Tapes, wires, records, discs or other media;

   for use with any electronic apparatus.

    Copyright, Insurance Services Office, Inc., 1990    HO 00 03 04 91

HO 00 03 04 91

**11.** $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

**a.** Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

**b.** Is away from the "residence premises"; and

**c.** Is used at any time or in any manner for any "business" purpose.

Electronic apparatus includes:

**a.** Accessories and antennas; or

**b.** Tapes, wires, records, discs or other media;

for use with any electronic apparatus.

**Property Not Covered.** We do not cover:

**1.** Articles separately described and specifically insured in this or other insurance;

**2.** Animals, birds or fish;

**3.** Motor vehicles or all other motorized land conveyances. This includes:

**a.** Their equipment and accessories; or

**b.** Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

**(1)** Accessories or antennas; or

**(2)** Tapes, wires, records, discs or other media;

for use with any electronic apparatus.

The exclusion of property described in **3.a.** and **3.b.** above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

**a.** Used to service an "insured's" residence; or

**b.** Designed for assisting the handicapped;

**4.** Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

**5.** Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

**6.** Property in an apartment regularly rented or held for rental to others by an "insured," except as provided in Additional Coverages **10.**;

**7.** Property rented or held for rental to others off the "residence premises";

**8.** "Business" data, including such data stored in:

**a.** Books of account, drawings or other paper records; or

**b.** Electronic data processing tapes, wires, records, discs or other software media;

However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

**9.** Credit cards or fund transfer cards except as provided in Additional Coverages **6.**

**COVERAGE D - Loss Of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

**1.** If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph **b.** below.

**a.** **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

**b.** **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

Payment under **a.** or **b.** will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

**2.** If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

**Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

**3.** If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under **1.** and **2.** above for no more than two weeks.

HO 00 03 04 91

The periods of time under **1.**, **2.** and **3.** above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

**ADDITIONAL COVERAGES**

**1. Debris Removal.** We will pay your reasonable expense for the removal of:

**a.** Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

**b.** Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

**a.** Your tree(s) felled by the peril of Windstorm or Hail;

**b.** Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

**c.** A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

**2. Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

This coverage:

**a.** Does not increase the limit of liability that applies to the covered property;

**b.** Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I - CONDITION **2.d.**

**3. Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4. Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to $500 for:

**a.** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

**b.** Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

**c.** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

**d.** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

HO 00 03 04 91

We do not cover use of a credit card or fund transfer card:

**a.** By a resident of your household;

**b.** By a person who has been entrusted with either type of card; or

**c.** If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured."

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

**a.** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

**b.** If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

**c.** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

**7. Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under COVERAGE A - DWELLING, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition **1.** Policy Period, under SECTIONS I AND II CONDITIONS, does not apply to this coverage.

**8. Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

**a.** Perils Insured Against in COVERAGE C - PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

**b.** Hidden decay;

**c.** Hidden insect or vermin damage;

**d.** Weight of contents, equipment, animals or people;

**e.** Weight of rain which collects on a roof; or

**f.** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items **b., c., d., e.,** and **f.** unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit of liability applying to the damaged covered property.

**9. Glass or Safety Glazing Material.**

We cover:

**a.** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

**b.** Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

This coverage does not include loss on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

HO 00 03 04 91

10. **Landlord's Furnishings.** We will pay up to $2500 for your appliances, carpeting and other household furnishings, in an apartment on the "residence premises" regularly rented or held for rental to others by an "insured," for loss caused only by the following Perils Insured Against:

a. **Fire or lightning.**

b. **Windstorm or hail.**

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

c. **Explosion.**

d. **Riot or civil commotion.**

e. **Aircraft,** including self-propelled missiles and spacecraft.

f. **Vehicles.**

g. **Smoke,** meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

h. **Vandalism or malicious mischief.**

i. **Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

j. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

k. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

(1) To the system or appliance from which the water or steam escaped;

(2) Caused by or resulting from freezing except as provided in the peril of freezing below; or

(3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

l. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

m. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain the system and appliances of water.

n. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

o. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

The $2500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

---

## SECTION I - PERILS INSURED AGAINST

**COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES**

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not, however, insure for loss:

1. Involving collapse, other than as provided in Additional Coverage 8.;

2. Caused by:

HO 00 03 04 91

**a.** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

  **(1)** Maintain heat in the building; or

  **(2)** Shut off the water supply and drain the system and appliances of water;

**b.** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

  **(1)** Fence, pavement, patio or swimming pool;

  **(2)** Foundation, retaining wall, or bulkhead; or

  **(3)** Pier, wharf or dock;

**c.** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**d.** Vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**e.** Any of the following:

  **(1)** Wear and tear, marring, deterioration;

  **(2)** Inherent vice, latent defect, mechanical breakdown;

  **(3)** Smog, rust or other corrosion, mold, wet or dry rot;

  **(4)** Smoke from agricultural smudging or industrial operations;

  **(5)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

  **(6)** Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

  **(7)** Birds, vermin, rodents, or insects; or

  **(8)** Animals owned or kept by an "insured."

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

**3.** Excluded under Section I - Exclusions.

Under items **1.** and **2.**, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

**COVERAGE C - PERSONAL PROPERTY**

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I - EXCLUSIONS.

**1. Fire or lightning.**

**2 Windstorm or hail.**

  This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

  This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

**3. Explosion.**

**4. Riot or civil commotion.**

**5. Aircraft,** including self-propelled missiles and spacecraft.

**6. Vehicles.**

**7. Smoke,** meaning sudden and accidental damage from smoke.

  This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism or malicious mischief.**

**9. Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

  This peril does not include loss caused by theft:

  **a.** Committed by an "insured";

  **b.** In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

HO 00 03 04 91

c. From that part of a "residence premises" rented by an "insured" to other than an "insured."

This peril does not include loss caused by theft that occurs off the "residence premises" of:

a. Property while at any other residence owned by, rented to, or occupied by an "insured," except while an "insured" is temporarily living there. Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

b. Watercraft, and their furnishings, equipment and outboard engines or motors; or

c. Trailers and campers.

10. **Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

a. To the system or appliance from which the water or steam escaped;

b. Caused by or resulting from freezing except as provided in the peril of freezing below; or

c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

---

## SECTION I - EXCLUSIONS

---

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

b. **Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

(1) Fire;

(2) Explosion; or

(3) Breakage of glass or safety glazing material which is part of a building, storm door or storm window;

ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

c. **Water Damage,** meaning:

(1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(2) Water which backs up through sewers or drains or which overflows from a sump; or

---

        Copyright, Insurance Services Office, Inc., 1990        HO 00 03 04 91

(3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

**d. Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

**e. Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**f. War,** including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**g. Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I - CONDITIONS.

**h. Intentional Loss,** meaning any loss arising out of any act committed:

(1) By or at the direction of an "insured"; and

(2) With the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

**a. Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph **1.** above to produce the loss;

**b. Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

**c. Faulty, inadequate or defective:**

(1) Planning, zoning, development, surveying, sitting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property whether on or off the "residence premises."

---

## SECTION I - CONDITIONS

---

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   **a.** To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

   **b.** For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

   **a.** Give prompt notice to us or our agent;

   **b.** Notify the police in case of loss by theft;

   **c.** Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

   **d.** Protect the property from further damage. If repairs to the property are required, you must:

(1) Make reasonable and necessary repairs to protect the property; and

(2) Keep an accurate record of repair expenses;

   **e.** Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

   **f.** As often as we reasonably require:

(1) Show the damaged property;

(2) Provide us with records and documents we request and permit us to make copies; and

(3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;

HO 00 03 04 91

g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the "insured" and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged personal property described in **2.e.** above;

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

a. Property of the following types:

(1) Personal property;

(2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

(3) Structures that are not buildings;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) The limit of liability under this policy that applies to the building;

(b) The replacement cost of that part of the building damaged for like construction and use on the same premises; or

(c) The necessary amount actually spent to repair or replace the damaged building.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(a) The actual cash value of that part of the building damaged; or

(b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(a) Excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

(b) Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(c) Underground flues, pipes, wiring and drains.

(4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of **b.(1)** and **b.(2)** above.

However, if the cost to repair or replace the damage is both:

(a) Less than 5% of the amount of insurance in this policy on the building; and

(b) Less than $2500;

we will settle the loss according to the provisions of **b.(1)** and **b.(2)** above whether or not actual repair or replacement is complete.

    Copyright, Insurance Services Office, Inc., 1990    HO 00 03 04 91

HO 00 03 04 91

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

    a. Repair or replace any part to restore the pair or set to its value before the loss; or

    b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

    Each party will:

    a. Pay its own appraiser; and

    b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. Reach an agreement with you;

    b. There is an entry of a final judgment; or

    c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured."

12. **Mortgage Clause.**

    The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

    c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

    If we pay the mortgagee for any loss and deny payment to you:

    a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

HO 00 03 04 91

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**

   a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

   b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

   c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

15. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

16. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

## SECTION II - LIABILITY COVERAGES

**COVERAGE E - Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

**COVERAGE F - Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location," if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured."

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability** and **Coverage F - Medical Payments to Others** do not apply to "bodily injury" or "property damage":

   a. Which is expected or intended by the "insured";

   b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

HO 00 03 04 91

**c.** Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":

(1) On an occasional basis if used only as a residence;

(2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(3) In part, as an office, school, studio or private garage;

**d.** Arising out of the rendering of or failure to render professional services;

**e.** Arising out of a premises:

(1) Owned by an "insured";

(2) Rented to an "insured"; or

(3) Rented to others by an "insured";

that is not an "insured location";

**f.** Arising out of:

(1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";

(2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph **(1)** or **(2)** above.

This exclusion does not apply to:

(1) A trailer not towed by or carried on a motorized land conveyance.

(2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

(a) Not owned by an "insured"; or

(b) Owned by an "insured" and on an "insured location";

(3) A motorized golf cart when used to play golf on a golf course;

(4) A vehicle or conveyance not subject to motor vehicle registration which is:

(a) Used to service an "insured's" residence;

(b) Designed for assisting the handicapped; or

(c) In dead storage on an "insured location";

**g.** Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

(2) The entrustment by an "insured" of an excluded watercraft described below to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an "insured." This exclusion does not apply to watercraft:

(1) That are not sailing vessels and are powered by:

(a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";

(b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";

(c) One or more outboard engines or motors with 25 total horsepower or less;

(d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";

(e) Outboard engines or motors of more than 25 total horsepower owned by an "insured" if:

(i) You acquire them prior to the policy period; and

(a) You declare them at policy inception; or

(b) Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.

(ii) You acquire them during the policy period.

This coverage applies for the policy period.

(2) That are sailing vessels, with or without auxiliary power;

(a) Less than 26 feet in overall length;

(b) 26 feet or more in overall length, not owned by or rented to an "insured."

HO 00 03 04 91

    (3) That are stored;

**h.** Arising out of:

    **(1)** The ownership, maintenance, use, loading or unloading of an aircraft;

    **(2)** The entrustment by an "insured" of an aircraft to any person; or

    **(3)** Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

**i.** Caused directly or indirectly by war, including the following and any consequence of any of the following:

    **(1)** Undeclared war, civil war, insurrection, rebellion or revolution;

    **(2)** Warlike act by a military force or military personnel; or

    **(3)** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**j.** Which arises out of the transmission of a communicable disease by an "insured";

**k.** Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**l.** Arising out of the use, sale, manufacture, delivery, transfer or possession by a person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions **e., f., g.,** and **h.** do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured."

**2. Coverage E - Personal Liability,** does not apply to:

**a.** Liability:

    **(1)** For any loss assessment charged against you as a member of an association, corporation or community of property owners;

    **(2)** Under any contract or agreement. However, this exclusion does not apply to written contracts:

    **(a)** That directly relate to the ownership, maintenance or use of an "insured location"; or

    **(b)** Where the liability of others is assumed by the "insured" prior to an "occurrence";

    unless excluded in **(1)** above or elsewhere in this policy;

**b.** "Property damage" to property owned by the "insured";

**c.** "Property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

**d.** "Bodily injury" to any person eligible to receive any benefits:

    **(1)** Voluntarily provided; or

    **(2)** Required to be provided;

by the "insured" under any:

    **(1)** Workers' compensation law;

    **(2)** Non-occupational disability law; or

    **(3)** Occupational disease law;

**e.** "Bodily injury" or "property damage" for which an "insured" under this policy:

    **(1)** Is also an insured under a nuclear energy liability policy; or

    **(2)** Would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

    **(1)** American Nuclear Insurers;

    **(2)** Mutual Atomic Energy Liability Underwriters;

    **(3)** Nuclear Insurance Association of Canada;

or any of their successors; or

**f.** "Bodily injury" to you or an "insured" within the meaning of part **a.** or **b.** of "insured" as defined.

**3. Coverage F - Medical Payments to Others,** does not apply to "bodily injury":

**a.** To a "residence employee" if the "bodily injury":

    **(1)** Occurs off the "insured location"; and

    **(2)** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

HO 00 03 04 91

b. To any person eligible to receive benefits:

(1) Voluntarily provided; or

(2) Required to be provided;

under any:

(1) Workers' compensation law;

(2) Non-occupational disability law; or

(3) Occupational disease law;

c. From any:

(1) Nuclear reaction;

(2) Nuclear radiation; or

(3) Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

(4) Any consequence of any of these; or

d. To any person, other than a "residence employee" of an "insured," regularly residing on any part of the "insured location."

---

### SECTION II - ADDITIONAL COVERAGES

---

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. Expenses we incur and costs taxed against an "insured" in any suit we defend;

   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

   c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit; and

   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to you or any other "insured."

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $500 per "occurrence" for "property damage" to property of others caused by an "insured."

   We will not pay for "property damage":

   a. To the extent of any amount recoverable under Section I of this policy;

   b. Caused intentionally by an "insured" who is 13 years of age or older;

   c. To property owned by an "insured";

   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

   e. Arising out of:

   (1) A "business" engaged in by an "insured";

   (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured," other than the "insured location"; or

   (3) The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

      This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an "insured."

4. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded under Section II of this policy; or

   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

   (1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

   (2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

   This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

---

HO 00 03 04 91

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of:

a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section II - Coverage E - Personal Liability Exclusion 2.a.(1);

2. Condition 1. Policy Period, under SECTIONS I AND II - CONDITIONS.

## SECTION II - CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured." This condition will not increase our limit of liability for any one "occurrence."

3. **Duties After Loss.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:

   a. Give written notice to us or our agent as soon as is practical, which sets forth:

      (1) The identity of the policy and "insured";

      (2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and

      (3) Names and addresses of any claimants and witnesses;

   b. Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";

   c. At our request, help us:

      (1) To make settlement;

      (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

      (3) With the conduct of suits and attend hearings and trials; and

      (4) To secure and give evidence and obtain the attendance of witnesses;

   d. Under the coverage - Damage to Property of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

   e. The "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury."

4. **Duties of an Injured Person - Coverage F - Medical Payments to Others.**

The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim - Coverage F - Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

        Copyright, Insurance Services Office, Inc., 1990        HO 00 03 04 91

HO 00 03 04 91

**6. Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

**7. Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**8. Other Insurance - Coverage E - Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

---

## SECTIONS I AND II - CONDITIONS

---

**1. Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

**2. Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an "insured" has:

   **a.** Intentionally concealed or misrepresented any material fact or circumstance;

   **b.** Engaged in fraudulent conduct; or

   **c.** Made false statements;

relating to this insurance.

**3. Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

**4. Waiver or Change of Policy Provisions.**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**5. Cancellation.**

   **a.** You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

   **b.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

   **(1)** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   **(2)** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   **(3)** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

      **(a)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

      **(b)** If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

   **(4)** When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

  **c.** When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

  **d.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**6. Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**7. Assignment.** Assignment of this policy will not be valid unless we give our written consent.

---

HO 00 03 04 91

**8. Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

**9. Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

**a.** We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

**b.** "Insured" includes:

**(1)** Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

**(2)** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

    Copyright, Insurance Services Office, Inc., 1990

# ELECTRIC INSURANCE COMPANY
## HOMEOWNERS PLUS

### - E N D O R S E M E N T -

**In consideration of the premium charged, your policy is amended as follows:**

#### SECTION I - CONDITIONS

**3. LOSS SETTLEMENT -**

this condition is replaced in its entirety by the following:

**3. LOSS SETTLEMENT -**

Covered property losses are settled as follows:

**a. Replacement Cost Protection -**

Personal Property Covered losses to the following property are settled at replacement cost at the time of loss:

(1) Personal Property;

(2) Awnings, unattached carpeting, household appliances, outdoor antennas, and outdoor equipment, whether or not attached to buildings.

(3) Structures that are not buildings.

Personal Property Replacement Cost coverage also applies to articles or classes of property separately described and specifically insured in this policy.

**b. Property not Eligible**

Property listed below is not eligible for replacement cost settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

(1) antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

(2) memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

(3) articles not maintained in good or workable condition.

(4) articles that are outdated or obsolete and are stored or not being used.

**c. Replacement Cost**

We will pay no more than the least of the following amounts:

(1) replacement cost at the time of loss without deductions for depreciation;

(2) the full cost of repair at the time of loss;

(3) the limit of liability that applies to Coverage C; or

(4) any special limits of liability stated in this policy.

**d.** When the replacement cost for the entire loss under this endorsement is more than $500, we will pay no more than the actual cash value for the loss or damage until the actual repair or replacement is complete.

**e.** You may make a claim for loss on an actual cash value basis and then make claim within 180 days after the loss for any additional liability in accordance with this endorsement.

**f. Replacement Cost Protection - Dwelling -** Covered losses to buildings under Coverage A or B are settled at replacement cost without deduction for depreciation, subject to the following:

(1) We will pay the cost to repair or replace without deduction for depreciation, but not exceeding the smallest of the following amounts. We agree that this amount may exceed the limit of liability which applies to Coverage A:

(a) The cost to replace the damaged part of the building with the same materials and for the same use.

(b) The amount you had to spend to repair or replace the damaged building.

(2) When the cost to repair or replace the damage is more than $5000 or more than a 5% of the amount of insurance on the building, whichever is less, we will pay no more than the actual cash value of the damage until actual repair or replacement is completed.

**g.** Also, subject to the following provisions:

(1) We agree to insure your Dwelling under Coverage A to 100% of full replacement cost using an appraisal method acceptable to us; and

(2) You allow us at each anniversary date of this policy to adjust the premium and limits of liability for Coverages A, B, C and D to adjust for inflation so that the limit of Coverage A equals the full replacement cost of the dwelling; and

G10196 (12/93)

(3) You inform us, within 30 days of completion, of changes made to the dwelling during the policy term which increase the replacement cost of the dwelling 5% or more; and purchase additional insurance for Coverage A equal to the amount of such cost; and

(4) You repair or replace the damaged dwelling.

(5) You may disregard this replacement cost provision and make claims for loss or damage on an actual cash value basis. Then you can make claims within 180 days after loss for any additional liability brought about by this provision.

## SECTION I - PROPERTY COVERAGES

### COVERAGE C - PERSONAL PROPERTY

**Special Limits of Liability**

The Special Limits for each of the following categories are increased to:

1. $500 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

6. $2,500 for loss by theft of jewelry, watches, furs, precious and semi-precious stones ($1,000 maximum per item).

8. $5,000 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

### ADDITIONAL COVERAGES

6. Credit Card, Fund Transfer Card, Forgery and Counterfeit Money

   The limit of liability is increased from $500 to $2,500; and the coverage is amended to include loss arising from bank cards and home banking. No deductible applies to this coverage.

The following Additional Coverages are added:

9. Refrigerated Products Coverage

   We will pay up to $500 toward losses to the contents of deep freeze or refrigerator units provided the loss occurs on the Residence Premises, is caused by power interruption or mechanical failure, and is not under the direct control of the insured. When you know about a loss to which this coverage may apply, you must use all reasonable means to protect the refrigerated products from further

damage. If you do not, this coverage will not apply to the loss. No deductible applies to this coverage.

Section I - Exclusions, item 1.d. does not apply to this coverage (HO-3 policies).

Section I - Exclusions, item 4. does not apply to this coverage (HO-2 policies).

10. Lock Replacement Coverage

    If the keys to your home are lost or stolen, we will pay up to $500 for expenses incurred by you to replace the locks for which keys were lost or stolen. No deductible applies to this coverage.

11. Business Data

    We will pay up to $1,000 toward covered losses as they apply to:

    a. books of accounts, drawings or other paper records; or

    b. electronic data processing tapes, wires, records,discs or other software media containing business data.

Section I - Property Coverages, Property Not Covered, item 8 is deleted.

12. Backup of Sewers of Drains/Sump Pump Coverage

    We will pay up to $1,000 for direct physical loss caused by water which backs up through sewers or drains or water which enters into and overflows from within asu mp pump or sump pump well. This coverage does not apply if the loss is caused by your negligence. The policy deductible applies.

Section I - Exclusions, item 1.c.(2) is deleted (HO-3 policies).

Section I - Exclusions, item 3.b. is deleted (HO-2 policies).

## SECTION II - LIABILITY COVERAGE

**Personal Injury**

Under **COVERAGE E-Personal Liability**, the definition of bodily injury is amended to include personal injury.

"Personal injury" means injury arising out of one or more of the following offenses:

(1) false arrest, detention or imprisonment, or malicious prosecution;

(2) libel, slander or defamation of character; or

(3) invasion of privacy, wrongful eviction or wrongful entry.

**Section II - Exclusions do not apply to personal injury. Personal Injury Insurance does not apply to:**

(1) liability assumed by the insured under any contract or agreement except any indemnity obligation assumed by the insured under a written contract directly relating to the ownership, maintenance or use of the premises;

(2) injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an insured;

(3) injury sustained by any person as a result of an offense directly or indirectly related to the employment of this person by the insured;

(4) injury arising out of the business pursuits of an insured; or

(5) civic or public activities performed for pay by an insured.

### SECTION II - ADDITIONAL COVERAGE

3. **Damage to Property of Others -** the limit of liability applicable to this coverage is increased to $1,000.

**ALL OTHER PROVISIONS OF THIS POLICY APPLY.**

page 3 of 3

G10196 (12/93)

UNLESS OTHERWISE PROVIDED, THE TERMS AND PROVISIONS OF THIS ENDORSEMENT MODIFY THE INSURANCE PROVIDED UNDER YOUR POLICY. PLEASE READ IT CAREFULLY.

# SPECIAL PROVISIONS - CONNECTICUT

## DEFINITIONS

Item **8.** is deleted in all forms and endorsements other than Form **HO 00 06** and Endorsements **HO 05 68, HO 05 69** and **HO 05 82** and replaced by the following:

**8.** "Residence premises" means:

**a.** The one family dwelling where you reside;

**b.** The two, three or four family dwelling where you reside in at least one of the family units; or

**c.** That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

## SECTION I - PROPERTY COVERAGES

## COVERAGE C - PERSONAL PROPERTY

## SPECIAL LIMITS OF LIABILITY

Items **10.** and **11.** are deleted and replaced by the following (These are Items **7.** and **8.** in Form **HO 00 08.**):

**10.** $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

**a.** Accessories or antennas; or

**b.** Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this Item **10.**

**11.** $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

**a.** Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

**b.** Is away from the "residence premises"; and

**c.** Is used at any time or in any manner for any "business" purpose.

Electronic apparatus includes:

**a.** Accessories and antennas; or

**b.** Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this Item **11.**

## PROPERTY NOT COVERED

Item **3.b.** is deleted and replaced by the following:

**3.** Motor vehicles or all other motorized land conveyances. This includes:

**b.** Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

**(1)** Accessories or antennas; or

**(2)** Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this Item **3b.**

The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

We do not cover vehicles or conveyances not subject to motor vehicle registration which are:

a. Used to service an "insured's" residence; or

b. Designed for assisting the handicapped;

## COVERAGE D - LOSS OF USE

For all forms other than **HO 00 04** and **HO 00 06**, Item 1. is deleted and replaced by the following:

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

   Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

For Forms **HO 00 04** and **HO 00 06**, Item 1. is deleted and replaced by the following:

1. If a loss by a Peril Insured Against under this policy to covered property or the building containing the property makes the "residence premises" not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

   Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

## ADDITIONAL COVERAGES

(All forms except **HO 00 01**), Paragraph f. under Item 8. Collapse is deleted and replaced by

the following:

f. Use of defective material or methods in construction, remodeling or renovation.

9. Glass or Safety Glazing Material is deleted and replaced by the following:

9. **Glass Or Safety Glazing Material.**

a. We cover:

(1) For all forms other than **HO 00 04** and **HO 00 06**, the breakage of glass or safety glazing material which is part of a covered building, storm door or storm window, and for:

(a) Form **HO 00 04**, the breakage of glass or safety glazing material which is part of a building, storm door or storm window, and covered as Building Additions And Alterations; and

(b) Form **HO 00 06**, the breakage of glass or safety glazing material which is part of a building, storm door or storm window, and covered under Coverage A; and

(2) For all forms other than **HO 00 04** and **HO 00 06**, the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a covered building, storm door or storm window, and for:

(a) Form **HO 00 04**, the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a building, storm door or storm window, and covered as Building Additions And Alterations; and

**(b)** Form HO **00 06,** the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a building, storm door or storm window, and covered under Coverage **A;** and

**(3)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

**b.** This coverage does not include loss:

**(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

**(2)** On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in **a.(2)** above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this Additional Coverage **9.** will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

For Forms HO **00 01** and HO **00 08,** we will pay up to $100 for loss under this coverage.

This coverage does not increase the limit of liability that applies to the damaged property.

(This is Additional Coverage **8.** in Forms HO **00 01** and HO **00 08).**

The following Additional Coverage is added to all forms except **HO 00 08.** With respect to Form **HO 00 04,** the words 'covered building' used below, refer to property covered under Additional Coverage **10.** Building Additions And Alterations.

**11. Ordinance Or Law**

**a.** You may use up to 10% of the limit of liability that applies to Coverage A (or for Form **HO 00 04,** you may use up to 10% of the limit of liability that applies to Building Additions And Alterations) for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

**(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

**(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

**(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

(This is Additional Coverage **10.** in Forms **HO 00 01** and **HO 00 06.**)

## SECTION I - EXCLUSIONS

1. **Ordinance or Law** is deleted and replaced by the following:

1. Ordinance Or Law, meaning any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **1.a.** in all forms other than Form **HO 00 03**, and **1.a.(1)** in Form **HO 00 03**, does not apply to the amount of coverage that may be provided for under Additional Coverages, Glass Or Safety Glazing Material or Ordinance Or Law;

b. The requirements of which result in a loss in value to property; or

c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not the property has been physically damaged.

(This is Exclusion **1.a.** in Form **HO 00 03**).

2. **Earth Movement** is deleted and replaced by the following:

2. Earth Movement, meaning earthquake, including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

a. Fire; or

b. Explosion;

ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

(This is Exclusion **1.b.** in Form **HO 00 03**.)

4. **Power Failure** is deleted and replaced by the following:

4. Power Failure, meaning the failure of power or other utility service if the failure takes place off the "residence premises." But if the failure of power or other utility service results in a loss, from a Peril Insured Against on the "residence premises," we will pay for the loss or damage caused by that Peril Insured Against.

(This is Exclusion **1.d.** in Form **HO 00 03**.)

8. **Intentional Loss** is deleted and replaced by the following:

8. **Intentional Loss**

We do not provide coverage for an "insured" who commits or directs an act with the intent to cause a loss.

(This is Item **1.h.** in Form HO 00 03.)

## SECTION I - CONDITIONS

3. **Loss Settlement**

Under Form **HO 00 06**, Item **b.(2)** is deleted and replaced by the following:

(2) If the damage is not repaired or replaced within a reasonable time, at actual cash value but not more than the amount required to repair or replace.

12. **Mortgage Clause**

(All Forms except **HO 00 04**) This condition is deleted and replaced by the following:

12. **Mortgagee Interest and Obligations**

If the loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the "insured", such interest in this policy may be cancelled by giving to such mortgagee ten days' written notice of cancellation.

If the "insured" fails to render proof of loss such mortgage, upon notice, shall render proof of loss in the form herein specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If this Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage. Other provisions relating to the interests and obligations of such mortgagee may be added hereto by agreement in writing.

## SECTION II - EXCLUSIONS

Under Item **2.** Coverage **E** – Personal Liability, Paragraph **f.** is deleted in all forms and Endorsements **HO 24 73** and **HO 24 82**. (This is Exclusion **2.f.** in **HO 24 73**; Item **6.** in **HO 24 82**.)

## SECTIONS I AND II - CONDITIONS

2. **Concealment or Fraud** is deleted and replaced by the following:

2. **Concealment or Fraud**

The entire policy will be void if, whether before or after a loss, an "insured" has intentionally:

a. Concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made material false statements;

relating to this insurance.

5. Cancellation

The first two paragraphs of b. and Item b.(2) are deleted and replaced by the following:

b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice, stating the reasons for cancellation, may be delivered to you, or mailed to you at your mailing address shown in the Declarations by registered mail, certified mail or United States Post Office certificate of mailing. The notice will state that excess premium (if not tendered) will be refunded on demand.

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel by letting you know at least 30 days before the date cancellation takes effect.

6. Nonrenewal is deleted and replaced by the following:

6. Nonrenewal

We may elect not to renew this policy and may do so by letting you know in writing at least 60 days before the expiration date of this policy. The written notice, stating the reasons for nonrenewal, may be delivered to you, or mailed to you at your mailing address shown in the Declarations by registered mail, certified mail or United States Post Office certificate of mailing.

All other provisions of this policy apply.

    Copyright, Insurance Services Office, Inc. 1999    HO 01 06 11 99